-IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| ALEX BLACKBURN,<br>    Petitioner | )<br>)<br>) |
| v. | )      No. 2:24-CV-52<br>)<br>) |
| UNITED STATES OF AMERICA,<br>    Respondent | )<br>) |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on the "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody," filed by Alex Blackburn (Petitioner),[Doc. 1], and his motion for "either, a ruleing (sic) on his motion 2255 or a status conference." [Doc. 9]. The United States has responded in opposition to the §2255 motion. [Doc. 6]. The motion for a ruling on his § 2255 motion is **GRANTED**. A review of the files and records in the case establishes that no evidentiary hearing is necessary, the motion lacks merit, and the § 2255 motion will be **DENIED**.

I. **Procedural History**

Petitioner, along with six others, was charged in a twenty-five count superseding indictment returned by a federal grand jury on January 19, 2022. [Doc. 20 in No. 2:21-CR-126]. He appeared before a Magistrate Judge for an initial appearance and arraignment on February 10, 2022. [Doc. 47 at *Id*.]. Petitioner signed a plea agreement with the United States on August 17, 2022. [Doc. 95 at *Id*.]. In the plea agreement, petitioner agreed to plead guilty to Count One charging him with conspiracy to distribute 50 grams or more of methamphetamine in violation of

1

21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) and agreed to a lengthy stipulation of facts "[i]n support of the defendant's guilty plea. . . which satisfy the offense elements." [Doc. 95, ₱ 4, at *Id*.]. Among other things, Petitioner admitted that a co-conspirator arrested in possession of approximately 2.5 kilograms of methamphetamine, approximately two kilograms of black tar heroin, and 457 grams of counterfeit oxycodone pills suspected to contain fentanyl, identified Petitioner as the individual who distributed methamphetamine for him and obtained kilogram quantities of methamphetamine two to three times per week for a couple of months. Another cooperating source identified Petitioner as a kilogram quantity distributor of methamphetamine. According to the cooperating source, Petitioner made numerous trips to obtain methamphetamine from Atlanta, Georgia and was obtaining counterfeit prescription medications that contained fentanyl. The source said Petitioner obtained two kilograms each time he re-supplied. [Doc.95, ₱ 4, at *id.*].

On November 4, 2021, Petitioner was confronted by Lexington, North Carolina police officers who were investigating shoplifting at a local hardware store. Upon a search of the vehicle, officers located a loaded Kahr, 9mm handgun, a Crown Royal bag containing a crystal substance believed to be methamphetamine, fifteen grams of suspected black tar heroin, and 1034 pills believed to be oxycodone. Officers also found multiple boxes of ammunition and a flamethrower. [*Id*.].

On November 29, 2021, a confidential source made a statement regarding firearms that Petitioner possessed. He/she told officers that Petitioner possessed over fifty firearms, some fully automatic. The investigation ultimately led to the seizure of two large gun safes from Petitioner's uncle. After obtaining a search warrant, officers recovered forty-four firearms. Petitioner agreed that he conspired with others to distribute 50 grams or more of actual methamphetamine. [*Id*.].

Petitioner appeared before the Magistrate Judge on August 25, 2022, for a Rule 11 colloquy

and entry of the guilty plea, [Doc. 112 at *Id.*]. The Magistrate Judge recommended that the Court accept Petitioner's guilty plea to Count One of the superseding indictment. [Doc. 118 at *Id.*]. Neither party objected to the Report and Recommendation and it was accepted by the Court on September 14, 2022, and Petitioner was adjudged guilty of conspiracy to distribute 50 grams or more of methamphetamine. [Doc. 138 at *Id.*]. A presentence investigation report ("PSR") was disclosed on February 6, 2023, [Doc. 198 at *Id.*], and Petitioner filed no objections to the PSR. [Docs. 205, 206 at *Id.*].

In the PSR, the base offense level for the stipulated quantity of at least 1.5 kilograms but less than 4.5 kilograms of actual methamphetamine, (see PSR., ¶ 62), was 36. Two levels were added to the base offense level for obstruction of justice pursuant to USSG § 3C1.1 and another two levels were added because a dangerous weapon was possessed under USSG § 2D1.1(b)(1). [*Id.* at ¶¶ 70, 71, 74]. After the three-level reduction for acceptance of responsibility under USSG §§ 3E1.1(a) and(b), the total offense level became 37. With Petitioner's criminal history category of IV, Petitioner's advisory guidelines range was 292-365 months of imprisonment. [*Id.* at ¶ 120]. After overruling Petitioner's objection to the obstruction enhancement, the PSR was adopted by the Court and Petitioner was sentenced to 300 months of imprisonment. [Docs. 271, 283, 287 in No. 2:22-CR-126]. Petitioner filed a notice of appeal, [Doc. 286 at *Id.*]. The appeal was dismissed by the Circuit Court of Appeals for the Sixth Circuit on August 24, 2023, on Petitioner's motion to voluntarily dismiss the appeal pursuant to Fed. R. Rules of App. Pro. 42(b), [Doc. 307 at *Id.*].

II. **Standard of Review**

Under § 2255, "a prisoner in custody under sentence of a federal court claiming the right to be released … may move the court which imposed the sentence to vacate, set aside, or correct the sentence." (28 U.S.C. § 2255(a)). A court must vacate and set aside a sentence if it concludes that the "judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by

3

law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." Id. § 2255(b). The legal standard that governs collateral review under § 2255 as opposed to direct review on appeal is significantly higher. *United States v. Frady*, 456 U.S. 152, 162–66 (1982); see *Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999).

A prisoner seeking relief under 28 U.S.C. § 2255 must show as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). To obtain relief for a denial or infringement of a constitutional right, a petitioner must establish an "error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings". *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). To obtain relief for a non-constitutional claim, a petitioner must establish that a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived him of the "rudimentary demands of fair procedure". *Reed v. Farley*, 512 U.S. 339, 354 (1994).

A petitioner has the burden of proving that "an error has occurred that is sufficiently fundamental to come within" one of the three "narrow limits" for § 2255 relief. *United States v. Addonizio*, 442 U.S. 178, 185 (1979); see *Pough*, 442 F.3d at 964. Conclusory allegations alone, without supporting factual averments, are generally insufficient to demonstrate a valid claim under § 2255. *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013).

III. **Discussion**

Petitioner's motion to vacate, set aside or correct sentence, [Doc. 1], was timely filed on April 8, 2024. No memorandum in support was filed by Petitioner. The United States responded in

4

opposition, [Doc. 6]. Petitioner has not filed a reply, although he requested and received an extension of time through August 31, 2024, to file a reply, [Docs. 7, 8]. More than six months have passed, and no reply has been filed and the § 2255 motion is RIPE FOR DISPOSITION. For the reasons which follow, the motion is DENIED.

The Petitioner raises three general grounds for relief based on claims of ineffective assistance of counsel in his motion. First, he claims counsel was ineffective for refusing to challenge the warrantless search and seizure of his automobile without making any investigation into facts surrounding his arrest. Second, he claims counsel was ineffective during plea negotiations and sentencing because counsel gave advice without performing legal research on the merits of a defense and did not seek credit for time served. Third, he claims counsel was ineffective for failing to challenge the quantity of the methamphetamine or its purity. More specifically, Petitioner alleges that counsel should have employed an independent chemist to test for purity. The Court will address each of petitioner's claims in the order raised.

### A. Warrantless Search and Seizure

As noted above, Petitioner claims as ground one that he was denied constitutionally effective counsel prior to pleading guilty. As "supporting facts," Petitioner offers the following:

> Defense counsel provided ineffective assistance by refusing to challenge the warrantless searches and seizures conducted by law enforcement officers, which unlawfully seized evidence resulted in the arrest of petitioner. That, when petitioner questioned defense counsel about filing a motion to suppress the evidence, it was counsel's response that it would be useless because a suppression motion would not succeed. No reason was given by defense counsel for making that conclusion. To the best of this petitioner's knowledge, defense counsel conducted no investigation into the facts surrounding the arrest, or the facts involved used by prosecutors to obtain the federal indictment.

[Doc. 1 at 4].

The United States responds, first of all, that once a criminal defendant admits in open court

that he is guilty, he may not thereafter raise those claims. Furthermore, the defendant, when raising claims of ineffective assistance of counsel based on failure to investigate or adequately investigate must allege with specificity what the investigation would have revealed, something Petitioner has not done. Third, the government responds that, while defendant now faults counsel for failing to seek to suppress evidence seized from the searches, he fails to identify any "unlawful" search or seizure or that a motion to suppress would have been successful.

The United States is correct on all counts. The general rule is that once a defendant has "solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the [alleged] deprivation of constitutional rights" before his guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973). That is precisely the situation here. Petitioner admitted under oath in open court that he is guilty of conspiracy to distribute 50 grams or more of methamphetamine, that he understood the charge against him, and that he was pleading guilty because he "is in fact guilty." [Doc. 95 in No. 2:21cr126, ¶¶ 3,5](Tr. of COP hrg., Doc. 305, at 23, 17). Not only that, Petitioner was specifically asked, before he entered his plea, if he was satisfied with the way his lawyer had represented him and he unequivocally answered "yes," voicing no concern about the research or investigation done by counsel or the failure to file any suppression motion. Non-jurisdictional defects are waived by the entry of a guilty plea, *United States v. Stiger,* 20 F. App'x 307, 309 (6th Cir. 2001).

Although it is unnecessary to do so, the Court will also address the remaining points raised by the government. A defendant, like the Petitioner here, who raises claims of ineffective assistance of counsel based on failure to investigate properly must "allege with specificity what the investigation would have revealed and how it would have altered the outcome." *United States v. Robson,* 307 F. App'x 907, 911 (6th Cir. 2009). Petitioner has made no effort to do that here. He

identifies no "facts" to be investigated, identifies no witnesses who should have been interviewed but were not, and importantly, makes no effort to show how the outcome of his case might have been altered.

Petitioner's effort to fault counsel for not seeking to suppress the evidence obtained during the searches fares no better. To prevail on this claim, petitioner must identify a specific search that was unlawful or that any effort to suppress the evidence seized would have been successful. As the United States points out, the search of the co-conspirator's phone was done with the phone owner's consent, Petitioner's vehicle was searched pursuant to the automobile exception to the warrant requirement, Petitioner's girlfriend's home was searched pursuant to a search warrant, and Petitioner's gun safes were removed from his uncle's home with consent and then searched pursuant to a warrant. As noted above, Petitioner did not file a reply even after being give an extension of time to do so by the Court. In short, Petitioner has come nowhere close to meeting his burden here.

Counsel's failure to file a meritless suppression motion "cannot constitute ineffective assistance of counsel." *Brown v. McKee*, 231 F. App'x 469, 475 (6th Cir. 2007) (quoting *United States v. Tisdale,* 195 F. 3d 70, 73-74 (2d Cir 1999)). Petitioner specifically acknowledged that he had conversations with counsel about suppression issues and admits that counsel determined such a course would have been "useless" and "would not succeed." [Doc. 1 at 4]. Petitioner has offered nothing more than conclusory and speculative allegations, unsupported by any facts, to overcome the presumption that counsel's representation was effective and "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

### B. Ineffective Assistance During Plea Negotiations and Sentencing

As already noted, Petitioner claims as Ground Two that he "received ineffective assistance of counsel during the sentencing hearing and plea negotiations in obtaining a plea agreement". As

7

supporting facts, he claims:

> Defense counsel, without investigating the facts, or performing rudimentary legal research, recommended pleading guilty because petitioner would receive a sentence of life imprisonment if a jury trial were held. Counsel's aforesaid advice was given without performing any legal research on the merits of a defense, or becoming knowledgeable about potential sentences for the offense. Although petitioner was already serving a term of imprisonment in the State of Tennessee for a state crime, and had been arrested in the State of North Carolina, and incarcerated for two months without charges being filed, defense counsel did seek to obtain credit against the federal offense for those periods of incarceration.

[Doc. 1 at 5].

Petitioner claims counsel's recommendation that he plead guilty pursuant to a plea agreement was ineffective because it was given "without performing any legal research on the merits of a defense, or becoming knowledgeable about potential sentences for the offense." [*Id*.]. This claim suffers, first of all, from the same defects noted as to Ground One. The allegations are speculative and conclusory, without any supporting facts, to overcome the presumption that counsel's performance was effective. He does not identify the "rudimentary legal research" that he claims should have been done or how it would have altered the outcome of Petitioner's case. He does not identify any meritorious defense that might have been asserted. Petitioner again fail to meet his burden by a wide margin.

Furthermore, the Court agrees with the United States that the decision to plead guilty rests, first and foremost, with the defendant, not his lawyer. *Smith v. United States,* 348 F.3d 345 (6th Cir. 2003*).* Counsel clearly fulfilled his role here. He made a recommendation; one Petitioner was free to accept or reject. Petitioner makes no claim that he was forced, or improperly induced, to enter into the plea agreement and ultimately to plead guilty by anyone, especially his lawyer. Indeed, he could not plausibly make such a claim in light of his own statements in his plea agreement, *i.e.* that he was pleading guilty because he is in fact guilty, [Doc. 95 in No.2:21-CR-126 at 10], and that he

8

"has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged, [*id*. at ⁋ 3], and his sworn statements at his change of plea hearing that he understood the terms of the plea agreement, that no promises or threats had been made by anyone to induce him to plead guilty, and that he was pleading guilty of his own free will. [Tr., Doc. 305 at 8, 11,16].

It is unclear whether Petitioner now claims that counsel erroneously advised him "that he would receive a sentence of life imprisonment if a jury trial were held." Even if he does make that claim, it appears that counsel's advice was essentially correct; his advisory guidelines range after a trial and guilty verdict would have been 360 months to life imprisonment. In any event, Petitioner does not argue that he wanted a jury trial nor has he offered any argument that he had any meritorious defense had he gone to trial.

Lastly, Petitioner faults defense counsel for failing "to seek to obtain credit against the federal offense for . . . periods of incarceration" served on a state charge he was serving and/or a North Carolina case where he served some pretrial time. Petitioner does not identify the state cases specifically or provide any other details. But "the power to grant credits for time served lies solely with the Attorney General and the Bureau of Prisons." *United States v. Crozier*, 259 F.3d 503, 520 (6th Cir. 2001). The most the Court could have done is make a non-binding recommendation to the Bureau of Prisons. The Court did, in fact order Blackburn's federal sentence to be served concurrently to his existing state sentence, something it appears the Bureau of Prisons has honored. [See Soc. 6-1].

### C. Ineffective Assistance re Quantity and Purity of Methamphetamine

Again, Petitioner finally alleges that he received ineffective assistance of counsel at sentencing and faults counsel for not challenging the quantity and purity of the methamphetamine. As "supporting facts," Petitioner alleges the following:

9

> Defense counsel failed to object to the Pre-Sentence Report's unsupported estimate of the quantity of methamphetamine that was attributed to the petitioner. Neither did counsel challenge the purity of the methamphetamine. Rather than being "actual', or "ICE", the methamphetamine was only a mixture, however, no independent chemist was employed by defense counsel to test the methamphetamine that petitioner was alleged to have possessed or distributed. Defense counsel merely accepted the prosecutor's position without challenging the quantity or purity level. Thus, counsel abandoned his duty to advocate for the petitioner.

[Doc.1 at 7].

This claim is frivolous and a complete non-starter. In his plea agreement with the government, Petitioner stipulated, pursuant to Rule 11(c)(1)(C), **"that the defendant entered a conspiracy to distribute and is accountable for a conservative quantity of at least 1.5 kilograms, but less than 4.5 kilograms of actual methamphetamine."** [Doc. 95 in No. 2:21cr126 at ¶6(d)]. (emphasis added). Thus, Petitioner's claim that the quantity used to establish the base offense level in the PSR was an "unsupported estimate" and that the methamphetamine "was only a mixture" are plainly contradicted by his own stipulation, one later affirmed under oath at his change of plea hearing. [Tr. of COP Hrg., Doc. 305 @ 23]. He conveniently attempts to ignore his own stipulation. And the stipulation was Petitioner's, not counsel's, as evidenced by Petitioner's sworn statements and the provisions of the plea agreement signed by Petitioner. Petitioner testified under oath before the Magistrate Judge that he had carefully reviewed the stipulation and that it was accurate. [Tr. of COP Hrg., *id*.]. Other than his bald claim made in the instant motion, without facts to support it, Petitioners' allegation that the methamphetamine was a "mixture," not "ICE" or "actual," made long after his guilty plea is devoid of anything that would have alerted defense counsel of Petitioner's claim. Counsel was clearly entitled to rely on what Petitioner had agreed to and his counsel was not ineffective in any way for relying on Petitioner's stipulation.

IV. **Certificate of Appealability**

Lastly, the Court must determine whether to issue a certificate of appealability, which is necessary for Mr. Blackburn to appeal its ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing, Mr. Blackburn must demonstrate that reasonable jurists would find the Court's assessment of those claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court concludes that reasonable jurists would not find that its dismissal of Mr. Blackburn's claims as meritless and conclusory is debatable or wrong. The Court therefore declines to issue a certificate of appealability to Mr. Blackburn.

V.      **Conclusion**

As the petitioner under § 2255, Mr. Blackburn fails to meet his burden of establishing that his conviction and sentence are in violation of the Constitution, or that a fundamental defect resulted in a complete miscarriage of justice or an egregious error. His motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Doc. 1] is therefore **DENIED**. The Court will enter an order consistent with this opinion.

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE